(C.D. 4132)

Schick X-Ray Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided November 24, 1970)

*Allerton deC. Tompkins* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Bernard J. Babb* and *Ralph A. Bontempo,* trial attorneys), for the defendant.

Before WATSON, MALETZ, and RE, Judges

RE, Judge: This case presents the question of the proper classification, for customs duty purposes, of an article imported from Sweden which is described as a "[n]umbering device" on the commercial invoice accompanying the official entry papers. The district director of customs at Chicago, the port of entry, classified the importation as a projector other than a motion-picture projector in item 722.40 of the Tariff Schedules of the United States, and imposed customs duty thereon at the rate of 35 per centum ad valorem.

Plaintiff by its protest, or amendments thereto, makes various claims for other classifications at lower rates of duty as follows:

| Claimed | TSUS Item No. | Ad Valorem Rate of Duty |
|---|---|---|
| Production counters and counters similar thereto | 711. 98 | 10 per centum |
| Photographic cameras | 722. 16 | 15 per centum |
| Printing machinery | 668. 20 | 12. 5 per centum |
| Numbering or dating machines | 676. 12 | 8. 5 per centum |
| Parts of X-ray apparatus | 709. 63 | 5. 5 per centum |
| Electrical articles, not specially provided for | 688. 40 | 11. 5 per centum |

Other claims made for classifications under item 722.12 at 20 per centum ad valorem as fixed focus cameras, or under item 709.66 at 12 per centum ad valorem as apparatus based on the use of radiations from radioactive substances, together with a claim for reduction of duty rate to 33 per centum ad valorem under item 722.40 as classified, not having been pursued, are hereby deemed abandoned and will be dismissed.

The record in this case consists of the testimony of one witness, Mr. Charles Redwine, who appeared on behalf of plaintiff, and four exhibits received in evidence.

Mr. Redwine, in charge of X-ray sales and electro-medical sales and service for the plaintiff herein, for the past nine years, had previously been employed in the X-ray field for approximately twenty years, in the sale and servicing of X-ray equipment. He testified to his familiarity with the device in issue, having seen it manufactured in Stockholm, and used in Sweden and in various hospitals in the United States. He has also installed and serviced the item all over the United States. A representative sample of the article in issue was received in evidence as plaintiff's exhibit 1.

From the testimony of the witness it appears that the device in controversy is used in conjunction with a "Cut Film Changer" which is used with X-ray apparatus. A catalog describing a "Cut Film Changer" and its parts and accessories was received in evidence as plaintiff's exhibit 2. The function of the imported article is to convey or relay to the X-ray film, contained in the X-ray apparatus, certain data which will ultimately appear on the X-ray film. The data consists of the name of the hospital in which the X-rays are being taken, the date of taking, the name and number of the patient, and the number in sequence from one through thirty of the X-ray pictures. The device automatically advances to the next number, and at the end of the series of thirty can be turned back to zero by pushing the reset button on the unit. The data to be relayed or transferred is typewritten on card stock. The patient's name or number or both, are typewritten on a piece of card stock approximately 1¾" x 2½" (exhibit 3), and the card is inserted in the front of the imported device above the control knobs. Two smaller pieces of card stock, measuring approximately ½" x 2" (exhibit 4), one having typewritten thereon the name of the hospital and the other the date the X-ray is being taken, are inserted in slots on opposite sides of the unit.

Light from an electric source is directed on the data cards (exhibits 3 and 4), and the typewritten material appearing thereon is reflected on a mirror and directed through an adjustable lens to the back side of an X-ray film negative. With the use of the imported article, the identification particulars described are transferred to one side of the X-ray film while the X-rays themselves are being recorded on the other side of the plate or film. When the X-ray film is subsequently developed, the identification particulars appear in the silver of the film.

The lens in the article in issue can be adjusted with the use of a small Allen wrench to vary the focus to improve the clarity of the

data to be relayed to the X-ray film. The light may also be adjusted.

The electrical features of the imported device were stated to be the mechanism for automatically changing the numbers in sequence from one through thirty, and for synchronization of the numbers with the X-ray film, or for the synchronization to run at a speed of one exposure each one-tenth of a second. There are also electrical circuits supplying the electric lights, and the electric lights themselves. Exhibit 1 does not have a shutter that opens and closes. Instead of controlling the amount of exposure time with a mechanical shutter, the exposure is controlled through the period and brilliance of the light source. The X-ray film or plate is not located in the article in controversy but in the X-ray film changer with which exhibit 1 is used. The article in issue does not employ X-ray radiation, and X-rays can and are taken without the use of the imported device.

As was stated in the case of *Hayes-Sammons Chemical Co.* v. *United States*, 55 CCPA 69, C.A.D. 935 (1968), "It is well established that the collector's classification is prima facie impressed with a presumption of correctness. The burden rests upon the appellant to affirmatively remove that presumption and, in addition thereto, to prove his claimed basis for classification."

It is equally well established that, in the absence of evidence of a contrary commercial designation, the meaning to be ascribed to a tariff provision is its common meaning. *United States* v. *C. J. Tower & Sons of Buffalo, N.Y.*, 48 CCPA 87, C.A.D. 770 (1961). Hence, in order to ascertain whether the article in issue is a projector, as classified, or whether it should properly have been classified as one of the various articles claimed by plaintiff, the court will first consider the common meaning of the word "projector".

The term "projector" is defined in *Webster's Third New International Dictionary* (1963) as follows:

> "*projector* n. *1* \* \* \* *2*: one that projects: as *a*: a device for projecting a beam of light (a searchlight) *b*: an optical instrument for projecting an image upon a surface (as a screen) by means of the transmission of light through a transparent slide or film *or the reflection of light from an opaque object* (as a photograph or postcard) \* \* \* [Italics added.]"

The court is of the opinion that the testimony given by the only witness in the case, as to how the imported device performs its function, conforms with the foregoing dictionary definition.

Unless evidence before the court would support a holding that the imported device is more specifically provided for elsewhere in the Tariff Schedules of the United States, the presumption of correctness attaching to the customs official's classification finds corroboration in the testimonial record, the exhibits, and lexicographic authority.

The evidence before the court is that the device in controversy is used in conjunction with X-ray apparatus to provide certain data in connection with the production of X-ray plates. Whether the device may have a number of different uses is not reflected in the record. The fact that the only witness called to testify knew of no other use is not proof that other uses did not exist. An importer's sole use of an article is not sufficient to overcome the presumption of correctness attending the district director's classification. *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554 (1954).

The first of plaintiff's contentions is that the imported device should properly have been classified as a production counter or a counter similar to a production counter contending that, although the device may not be designed only and specifically as a "production" counter, the provision in item 711.98 provides as well for "counters" similar to a production counter. While it appears from the testimony that the imported article may be so synchronized as to number X-ray films in sequence from one through thirty, that is but one function the device performs. In addition it identifies the plates with the name of the hospital in which the X-rays are being taken, the date of taking, and the name and number of the patient being X-rayed. In the opinion of the court, therefore, the imported device is more than a production counter or a counter similar to a production counter, and accordingly is not within the purview of item 711.98. *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962).

The same rationale is applicable to plaintiff's claim for classification of the article in controversy as a numbering or dating machine of the kind provided for in item 676.12 of the Tariff Schedules of the United States. The latter claim cannot be sustained for the further reason that the provision for numbering or dating machines in item 676.12 appears under subpart G of part 4, schedule 6 of the tariff schedules applicable to "Office Machines". Subpart G, headnote 2, reads as follows:

"2. For the purposes of this subpart—
(a) the term 'office machines' refers to machines which are used in offices, shops, factories, workshops, schools, depots, hotels, and elsewhere, for doing work concerning the writing, recording, sorting, filing, mailing of correspondence, records, accounts, forms, etc., or for doing other 'office work', and which have a base for fixing or placing them on a table, desk, wall, floor, or similar place; and
(b) * * *"

Inasmuch as the record indicates that the imported device is employed in connection with X-ray apparatus used in a hospital, it is not such a machine as would be encompassed by the term "office machine" for

doing "office work" within the foregoing definition. The claim of plaintiff for classification of the article in issue in item 676.12 must therefore be overruled.

Another alternative claim of plaintiff is that the imported device should properly have been classified within the provision for photographic cameras in item 722.16, and subjected to duty at the rate of 15 per centum ad valorem. By stipulation of the parties it was agreed that the value of the lens in the imported article is less than 50 percent of the value of the device. It appears from the record that the article in issue, in and of itself, is not a camera. It is an adjunct or accessory to an X-ray machine by which X-ray plates are identified by name, date, order of taking, and any other information desired to be imposed upon the X-ray plates. The imported device admittedly does not contain a film and does not perform a camera function. It merely projects to the reverse side of the X-ray film identifying data which, upon development of the X-ray film, will be reproduced as part of the finished X-ray plate or film.

In support of its claim for classification as a photographic camera, plaintiff cites several cases. All of them have been considered but are clearly distinguishable. Typical of these cases is *Fairchild Camera & Instrument Corp., Inter-Maritime Forwarding Co., Inc.* v. *United States*, 53 CCPA 122, C.A.D. 887 (1966), wherein a photofluorographic camera, together with certain items of auxiliary equipment, used only with X-ray apparatus, was held to be subject to classification as photographic cameras and parts thereof within the *eo nomine* provision therefor in paragraph 1551 of the Tariff Act of 1930. The record in the *Fairchild Camera* case established that the imported articles there in controversy were the photo or camera portion of the photofluorographic apparatus which was sold to manufacturers of complete X-ray outfits. That record also established that the accessories imported with the camera portion, including "a card-holder which is electrically tied in with the film transport and the optical system in such manner as to prevent picture taking unless a new patient's card is inserted and which records the card on the picture for identification", were essential components of the cameras enabling them to perform their intended function.

The article at bar, however, which merely serves to project certain identification data to the film in the X-ray machine, is not in itself a camera. Moreover, since the testimony reveals that X-rays can be and are taken without the imported device it is clear that the article is not so dedicated in its use as to support a holding that it is a "part" of a camera in the tariff sense.

Even if the record was sufficient to support a finding that the imported device was a "part" of a photographic camera used for

X-ray purposes, it would nevertheless be subject to classification within the *eo nomine* provision for said device as a "projector" in item 722.40 by virtue of General Headnote 10(ij) to the tariff schedules. General Headnote 10(ij) provides that "*a provision for 'parts' of an article* covers a product solely or chiefly used as a part of such article, but *does not prevail over a specific provision for such part*." [Italics added.] Consequently, plaintiff's claim for classification of the article in issue as a photographic camera in item 722.16 of the tariff schedules is deemed to be untenable.

The court can dispose of plaintiff's claim for classification of the imported device, as printing machinery, in item 668.20 of the tariff schedules, by reference to the case of *United States* v. *Perry Ryer & Co.* 41 CCPA 18, C.A.D. 524 (1953). In the *Perry Ryer & Co.* case, machines which deposited paint pigments on paper or cardboard, to make color cards for use in advertising and selling paint, did not constitute "printing" machinery for the reason that for a device to come within the provision for printing machinery it must print something. Likewise, the device at bar does not *print* anything, but merely *projects* matter already printed on pieces of cardboard to a film in an X-ray apparatus. The printed matter thus recorded, together with an X-ray impression, is indicated on an X-ray plate which is subsequently developed by photographic means. In view of the foregoing, plaintiff's claim for classification as printing machinery in item 668.20 of the tariff schedules must be overruled.

In connection with its claim for classification as parts of X-ray apparatus in item 709.63 of the tariff schedules, plaintiff, at page 17 of its brief, contends—

"The record establishes that this protested device is designed for use only with X-ray cameras, and that it works in conjunction with the X-ray apparatus when it takes X-ray pictures. * * *"

The court is of the opinion that the record does not establish the fact asserted. There is no evidence before the court to the effect that the imported device is dedicated to use with X-ray cameras. Plaintiff's witness testified that X-rays can be and are taken without the use of the instant device, and that it is not necessary for the taking of an X-ray. Plaintiff's claim for classification in item 709.63 of the tariff schedules is, accordingly, overruled.

The last of plaintiff's alternative claims is for classification of the article in controversy within the provisions of item 688.40 as an electrical article, not specially provided for. It is to be noted that the claimed item 688.40 appears in part 5 of schedule 6 of the tariff schedules which contains the following exclusionary headnote:

"1. This part does not cover—

\* \* \* \* \* \* \*

 (vi) electrical instruments and apparatus provided for in schedule 7."

On this record, the presumption of correctness of the district director's classification of the imported device, as a projector under item 722.40 appearing in schedule 7 of the tariff schedules, has not been overcome. This claim is therefore also found to be within merit.

Since the plaintiff has not succeeded in overcoming the presumption of correctness which attaches to the district director's classification, nor established the correctness of any of its claims, all claims in this protest are hereby overruled, except for those under items 709.66, 722.12, and 722.40 which, being deemed abandoned, are dismissed .

Judgment will be entered accordingly.